**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                        )
JUDICIAL WATCH, INC.,                   )
                                        )
            Plaintiff,                  )
                                        )   Case No. 1:12-CV-00931 (EGS)
        v.                              )
                                        )
CONSUMER FINANCIAL                      )
PROTECTION BUREAU                       )
                                        )
            Defendant.                  )
_____)


## MEMORANDUM OPINION

     This Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 _et
seq._, case is before the Court on cross motions for summary
judgment.  At issue is the Consumer Financial Protection
Bureau's ("CFPB" or the "Bureau") response to plaintiff Judicial
Watch, Inc.'s requests for documents relating to the appointment
of Richard Cordray as director of the CFPB.  Upon consideration
of the motions, the responses and replies thereto, the entire
record, and for the reasons explained below, defendant's motion
will be **GRANTED IN PART AND DENIED IN PART**, and plaintiff's
cross motion will be **GRANTED IN PART AND DENIED IN PART**.[1]

---

[1] Plaintiff requests a hearing on its cross motion.  After
reviewing the parties' pleadings, the Court is satisfied that a
hearing is not necessary to resolve the pending motions.
Accordingly, the request is denied.

## I. FACTUAL BACKGROUND

Plaintiff is a non-profit, educational foundation which regularly requests access to the public records of government entities and disseminates its findings to the public. Compl. ¶ 3. On January 12, 2012, plaintiff submitted a FOIA request to CFPB, seeking all records of communications between the CFPB and various entities concerning President Obama's visit to the CFPB and his recess appointment of Richard Cordray as director of the CFPB. Declaration of Brett Kitt ("Kitt Decl.") Exh. A. The January 12 request was assigned a FOIA tracking number. *Id.* ¶ 3. On January 25, 2012, plaintiff submitted another FOIA request to CFPB, seeking all records of communications concerning Mr. Cordray's appointment as director of the CFPB and any documentation reflecting travel and lodging for Mr. Cordray, his family, and any additional guests. *Id.* Exh. B. The January 25 request was also assigned a FOIA tracking number. *Id.* ¶ 4.

On January 27, 2012 and January 30, 2012, CFPB sent letters to plaintiff formally acknowledging the receipt of the requests. *Id.* Exhs. C, D. On March 30, 2012, CFPB issued an interim response to plaintiff's January 25 FOIA request, explaining that the Bureau's initial search for the requested documents produced 269 pages, that the Bureau would partially release 220 pages, and that the Bureau would claim FOIA Exemptions 5 and 6 for the remaining 49 pages. *Id.* Exh. F.

With this response, CFPB partially released 220 pages of responsive material. *Id.* In April 2012, there were additional communications between the parties regarding the status of CFPB's determinations on the pending FOIA requests. *Id.* Exhs. G, H. On June 7, 2012, CFPB informed plaintiff by telephone and by e-mail that the Bureau intended to issue its determination shortly. *Id.* Exh. I. On the same day, plaintiff brought this action alleging that CFPB failed to comply with the relevant timelines set forth in 5 U.S.C. § 552(a)(6)(A) with respect to both of its requests. See generally Compl. On June 8, 2012, CFPB issued its determination as to both of plaintiff's FOIA requests. Kidd Decl. Exhs. J, K. With this response, CFPB partially released an additional 12 pages of responsive material and withheld an additional 3 pages under FOIA Exemptions 5 and 6. *Id.* The response letters also informed plaintiff of the right to administratively appeal the Bureau's determination. *Id.*

Subsequently, while this litigation was pending, the CFFB conducted another search for records responsive to both FOIA requests. Kidd Decl. Exh. L. On September 28, 2012 it released a supplemental production to plaintiff consisting of 17 pages of responsive records released in full and 8 pages released in part. *Id.* Eight hundred eighty pages were withheld in full. *Id.* While preparing its *Vaughn* index, the Bureau identified a

3

small amount of previously withheld material which it later
determined could be partially released.  *Id.* Exh. N.  It
released those records to plaintiff.  *Id.*

On November 9, 2012, the Bureau moved for summary judgment,
claiming that plaintiff did not exhaust its administrative
remedies.  Def.'s Mot for Summ. J. at 8-15.  The Bureau also
argues that its search was adequate and that all of the material
it did not release was properly withheld. See generally *Id.*  On
January 18, 2013, the plaintiff filed a cross motion for summary
judgment.  Plaintiff does not challenge the adequacy of the
search, nor does it challenge "the majority of CFPB's withheld
documents."  Pl.'s Combined Cross Mot. for Summ J./Opp'n to
Def.'s Mot. Summ. J. ("Pl.'s Combined Cross Mot./Opp'n") at 1.
Plaintiff argues that it exhausted its administrative remedies,
and further argues that the Bureau improperly invoked Exemption
5 for several records.  *Id.* at 2.  The motions are now ripe for
the Court's decision.

## II. STANDARD OF REVIEW

### A.    **Summary Judgment in a FOIA Case**

Summary judgment is granted when there is no genuine issue
of material fact and the movant is entitled to judgment as a
matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v.
Catrett*, 477 U.S. 317, 325 (1986); *Waterhouse v. Dist. of
Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002).  In determining

whether a genuine issue of fact exists, the court must view all facts in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Under FOIA, all underlying facts and inferences are analyzed in the light most favorable to the FOIA requester; as such, only after an agency proves that it has fully discharged its FOIA obligations is summary judgment appropriate. *Moore v. Aspin*, 916 F. Supp. 32, 35 (D.D.C. 1996) (citing *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1350 (D.C. Cir. 1983)). FOIA cases are typically and appropriately decided on motions for summary judgment. *Gold Anti-Trust Action Comm., Inc. v. Bd. of Governors of Fed. Reserve Sys.*, 762 F. Supp. 2d 123, 130 (D.D.C. 2011) (citations omitted).

In reviewing a motion for summary judgment under the FOIA, the court must conduct a *de novo* review of the record. *See* 5 U.S.C. § 552(a)(4)(B) (2012). The court may award summary judgment solely on the basis of information provided by the department or agency in affidavits or declarations that describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *see also Vaughn v.*

*Rosen*, 484 F.2d 820, 826-28 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974). Agency affidavits or declarations must be "relatively detailed and non-conclusory." *SafeCard Services v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991). Such affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *Id.* (internal citation and quotation omitted).

## III. DISCUSSION

### A. Exhaustion of Administrative Remedies

"Exhaustion of administrative remedies is generally required before filing suit in federal court so that the agency has an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision." *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 61 (D.C. Cir. 1990) (citing *McKart v. United States*, 395 U.S. 185, 194 (1969)). In the FOIA context, this exhaustion requirement is triggered when an agency issues a response to a FOIA request within the relevant statutory timelines – within 20 working days of receiving the FOIA request, or within 30 working days in "unusual circumstances." 5 U.S.C. § 552(a)(6)(A)(i), (a)(6)(B)(i). To trigger the exhaustion requirement, the agency must at least:

(i) [G]ather and review the documents; (ii) determine and
communicate the scope of the documents it intends to
produce and withhold, and the reasons for withholding any
documents; and (iii) inform the requester that it can
appeal whatever portion of the "determination" is adverse.

*Citizens for Responsibility and Ethics in Washington ("CREW") v.
FEC*, 711 F.3d 180, 188 (D.C. Cir. 2013); *see also* 5 U.S.C.
§ 552(a)(6)(A)(i) (providing that the response must include the
agency's "determination" on whether to comply with the request
and "the reasons therefor," and notice of the requester's right
to appeal any adverse determination).  An agency response that
does not include all the necessary components may be deemed
insufficient to trigger the exhaustion requirement.  *See CREW*,
711 F.3d at 188 (stating that more than "an initial statement
that the agency will generally comply with a FOIA request and
will produce non-exempt documents and claim exemptions in the
future" is required); *Oglesby*, 920 F.2d at 67 (finding that an
agency response that does not provide notice of FOIA requester's
right to appeal was insufficient to trigger the exhaustion
requirement).

   Where the agency fails to issue a determination sufficient
to trigger the exhaustion requirement within the statutory
timelines, the FOIA requester is deemed to have exhausted
administrative remedies.  5 U.S.C. § 552(a)(6)(C)(i).  However,
if the agency cures its failure to timely respond before the
requester files suit, the constructive exhaustion provision does

not apply and the requester must first administratively appeal any adverse determination. *Oglesby*, 920 F.2d at 63-64. Thus, to determine whether plaintiff must satisfy the exhaustion requirement in the instant case, it is necessary to determine whether CFPB has issued its determination within the relevant time period, or at least before plaintiff filed suit.

Plaintiff, in its Notice of Supplemental Authority, cites to the D.C. Circuit's decision in *CREW* to support its argument that CFPB's acknowledgement letters on January 27 and January 30, and CFPB's interim response letter on March 20 cannot trigger the administrative exhaustion requirement because the Bureau failed to notify plaintiff of the right to appeal. Pl.'s Notice of Supp. Auth. at 2. CFPB does not attempt to refute plaintiff's arguments. The Court agrees with plaintiff that CFPB's letters issued prior to the initiation of this case are insufficient to trigger the exhaustion requirement for this reason. CFPB only provided plaintiff with the notice of the right to appeal in its June 8 letter. However, because this letter was issued *after* plaintiff initiated this lawsuit, it cannot be used to cure CFPB's failure to timely respond to FOIA requests. Thus, the Court finds that CFPB failed to issue its determination within the statutory time period or before plaintiff brought this action, and that plaintiff has therefore constructively exhausted its administrative remedies.

**B. Exemption 5**

Exemption 5 permits an agency to withhold documents such as "inter-agency or intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with the agency." 5 U.S.C. § 552(b)(5). Judicial Watch challenges CFPB's withholding of certain records based on the deliberative process, attorney-client, attorney work product, and the presidential communications privileges.

The deliberative process privilege "rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance the quality of agency decisions by protecting open and frank discussion among those who make them within the government." *DOI v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8–9 (2001) (citations omitted). To qualify for withholding under the deliberative process privilege, the withheld material must be both predecisional and deliberative. "A document is predecisional if it was prepared in order to assist an agency decisionmaker in arriving at his decision, rather than to support a decision already made. Material is deliberative if it reflects the give-and-take of the consultative process." *Petroleum Info Corp. v. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992) (citations and quotation marks omitted).

The attorney client privilege is meant "to assure that a client's confidences to his or her attorney will be protected, and therefore encourage clients to be as open and honest as possible with attorneys." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 862 (D.C. Cir. 1980). The privilege "is not limited to communications made in the context of litigation or even a specific dispute, but extends to all situations in which an attorney's counsel is sought on a legal matter." *Id.* The attorney work product privilege, by contrast, is "limited to documents prepared in contemplation of litigation." *Id.* at 864. While obviously related, the privileges have different goals: "the attorney client privilege exists to protect confidential communications," while the work product privilege "promote[s] the adversary system by safeguarding the fruits of an attorney's trial preparations." *United States v. AT&T Co.*, 642 F.2d 1285, 1299 (D.C. Cir. 1980).

The purpose of the presidential communications privilege is to "guarantee the candor of presidential advisers and to provide '[a] President and those who assist him . . . [with] freedom to explore alternatives in the process of shaping policies and making decisions and to do so in a way many would be unwilling to express except privately." *In re Sealed Case*, 121 F.3d 729, 743 (D.C. Cir. 1997) (quoting *U.S. v. Nixon*, 418 U.S. 683, 708 (1974)). "This privilege extends to communications authored or

received in response to a solicitation by members of a presidential adviser's staff, since in many instances advisers must rely on their staff to investigate and issue and formulate the advice to be given to the President." *ACLU v. DOJ*, Case No. 10-123, 2011 U.S. Dist. LEXIS 156267, *30 (D.D.C. Feb. 14, 2011) (citing *In re Sealed Case*, 121 F.3d at 752).

### 1. Deliberative Process Privilege

Judicial Watch challenges the CFPB's withholding of two records for which the Bureau cites only the deliberative process privilege as grounds for the withholding. The Court addresses each in turn.

### a. Briefing Materials

Plaintiff challenges the CFPB's withholding of two emails within a chain dated December 6, 2011, which discuss draft briefing materials for the Deputy Secretary of the Treasury. Pl.'s Combined Cross Mot./Opp'n at 10-11; Def.'s *Vaughn* Index at 78-79, Bates 1149-1172. Plaintiff argues that the attachment to those two emails is labeled "final.dox," which indicates that the document is a final document, not a draft, and is therefore not predecisional. *Id*. at 11. The CFPB responds that "even final versions of briefing materials are predecisional and subject to the deliberative process agency actions or propose talking points for agency officials to incorporate into their presentations or question-and-answer-sessions." Def.'s Opp'n to

Cross Motion/Reply in Support of Summ. J. Mot. at 9-10 ("Def.'s Combined Opp'n/Reply"). The CFPB points out that the full name of the attachment is "CFPB - TFG QA – fall 2011 – final.dox." *Id.* at 11; *Vaughn* Index at 78-79. Defendant explains that TFG stands for then Treasury Secretary Timothy Geithner and QA stands for question and answer regarding the CFPB. *Id.* The document therefore "reflect[s] potential or suggested responses to a range of questions that Treasury may receive regarding the Bureau, which may or may not reflect [Treasury's] ultimate public statement or position." *Id.*

The Court finds the Bureau has carried its burden to prove the applicability of its claimed exemption. Internal communications regarding how to respond to media and Congressional inquiries have repeatedly been held to be protected under the deliberative process privilege. *Judicial Watch, Inc. v. U.S. Dep't of the Treasury*, 796 F. Supp. 2d 13, 31 (D.D.C. 2011); *Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 736 F. Supp. 2d 202, 208 (D.D.C. 2010); *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 337 F. Supp. 2d 146, 174 (D.D.C. 2004). The CFPB's declaration and *Vaughn* index indicate that the withheld documents contain talking points and briefing materials, including recommendations for how to answer questions about the CFPB, that were prepared by Bureau employees for the consideration of decision makers at Treasury. Judicial Watch's

12

selective quoting of name of the attachment listed in the *Vaughn* index does not convince the Court otherwise.

### b. Email Between White House Official and CFPB

The second document challenged by plaintiff is an email from Nicole Isaac, a White House staffer, to CFPB employee Lisa Konwinski. *Vaughn* Index at 12 (Bates 390-91). It is titled "HJC February 15th on Cordray," and the Bureau claims it is subject to the deliberative process privilege because it constitutes "a request of the White House for advice regarding a Congressional hearing and [to] discuss suggestions for responding to that request." *Id.* Judicial Watch argues that it is not subject to the privilege because under FOIA, the deliberative process privilege is limited to "inter-agency or intra-agency" records, 5 U.S.C. § 552(b)(5), and "[g]enerally, the White House staff is not considered to be an agency for purposes of FOIA." Pl.'s Combined Cross Mot./Opp'n at 9-10. The Bureau concedes that the White House is not an agency for the purposes of FOIA, but argues that Exemption 5 nevertheless applies to communications between agencies and the White House that would otherwise be privileged in civil discovery. Def.'s Combined Opp'n/Reply at 13-14.

The Court agrees with plaintiff that the Bureau has not demonstrated this document should be withheld under Exemption 5.

The FOIA directs that "each agency, upon any request for records . . ., shall make the records promptly available to any person" for "public inspection and copying," unless the records fall within one of the exclusive statutory exemptions. *See* 5 U.S.C. §§ 552(a)(2) & (a)(3)(A).  The protections of FOIA, however, do not apply to all employees working in the White House. "Although the Executive Office of the President is an agency subject to the FOIA, see 5 U.S.C. § 552(f)(1), the Office of the President is not." *Judicial Watch Inc. v DOJ*, 365 F.3d 1108, 1109, n.1 (D.C. Cir. 2004) (citations omitted).

The cases cited by the Bureau do not support its claim that the deliberative process privilege is available to employees in the Office of the President in FOIA litigation.  The first case CFPB cites, *CREW v. Dep't of Homeland Security*, Case 06-173, 2008 U.S. Dist. LEXIS 57442 (D.D.C. July 22, 2008) concerns Exemption 5's presidential communications privilege, not its deliberative process privilege.  Unlike the deliberative process privilege, "there is [available in FOIA litigation] . . . a built-in presidential communications privilege for records in the possession of, or created by, immediate White House advisers, who are not considered an agency for the purposes of FOIA." *Judicial Watch*, 365 F.2d at 1112.  The other case cited by Defendant, *Judicial Watch, Inc. v. Dep't of Energy*, 412 F.3d 125 (D.C. Cir. 2005), is likewise not helpful to the Bureau

14

because it involved a committee within the Executive Office of the President, which is subject to the FOIA and can therefore assert the deliberative process privilege. *Id.*, see also *In re: Cheney*, 406 F.3d 723, 725 (D.C. Cir. 2005).

Accordingly, because FOIA's deliberative process privilege applies to certain employees working in the White House but not to all, the application of the privilege hinges on what capacity in the White House Ms. Isaac worked, and for what office. The Bureau's declaration and *Vaughn* index do not provide this information. Thus the Court cannot conclude that the deliberative process privilege is properly invoked, and will therefore deny the Bureau's motion for summary judgment with respect to the records in Bates Range 390-391. CFPB must either disclose the record withheld or, in the alternative, indicate in sufficient detail why withholding is proper.

2. *Attorney Client and Attorney Work Product Privilege: Communications with Department of Justice*

Plaintiff challenges the Bureau's withholding of four communications between employees at the Bureau and attorneys at the Department of Justice.[2] See Pl.'s Combined Cross Mot./Opp'n

---

[2] Plaintiff also challenged the withholding of an email exchange between the CFPB and the Treasury pursuant to the attorney client and work product privileges. Pl.'s Combined Cross Mot./Opp'n at 11-12, *Vaughn* Index at 77-78 (Bates 1135-48). The Bureau subsequently released the document to the plaintiff. Def.'s Combined Opp'n/Reply at 12, n.5. Accordingly, it is no longer a subject of dispute between the parties.

at 12.  These communications took place on January 12, 19 and 27, 2012.  *Id.; see also Vaughn* Index at 9 (Bates 339-382), 16 (Bates 423), 28 (Bates 578-79), 30 (Bates 658), 31 (Bates 666-69).  Plaintiff argues that the Bureau has not demonstrated the attorney client privilege applies because it has not specifically established the lawyer client relationship.  *Id.* Plaintiff also argues the CFPB has not met its burden to show the work product doctrine applies because it has not shown the DOJ lawyers were working "in the capacity of [the CFPB's] attorney[s] . . . for any specific litigation."  *Id.* at 12. CFPB responds that all of these emails concern anticipated litigation challenging President Obama's January 4, 2012 recess appointment of Director Cordray.  Def.'s Mot. at 21-32; Kitt Decl. ¶ 26-27 (explaining that Department of Justice attorneys are authorized to represent the Bureau in litigation, and that the communications occurred "for the purpose of defending the CFPB in litigation challenging the recess appointment of the Director.").  The government argues that litigation over Director Cordray's recess appointment was reasonably foreseeable in light of immediate litigation challenging other Presidential recess appointments made on the same day as Director Cordray's. Def.'s Mot. at 2-3, 23-34; Def.'s Combined Opp'n/Reply at 12-13.

In assessing whether the proponent has carried its burden to show a document is protected as work-product, the relevant

inquiry is "whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared . . . because of the prospect of litigation." *EEOC v. Lutheran Soc. Servs.*, 186 F.3d 959, 968 (D.C. Cir. 1999). Although an agency need not have a specific claim in mind when preparing the documents, there must exist some articulable claim that is likely to lead to litigation in order to qualify the documents as attorney work-product. *Coastal States Gas Corp.*, 617 F.2d at 865; *Am. Immigration Council v. Dep't of Homeland Security*, 905 F. Supp. 2d 206, 221 (D.D.C. 2012) (work product encompasses documents prepared for litigation that is "foreseeable," if not necessarily imminent; "documents that . . . advise the agency of the types of legal challenges likely to be mounted to a proposed program, potential defenses available to the agency, and the likely outcome," are covered).

In this case, the CFPB's affidavit and *Vaughn* index consistently demonstrate that the documents were prepared in reasonable anticipation of litigation challenging the appointment of Director Cordray. It is a matter of public record that the legality of the appointment was immediately questioned by some members of Congress, and the recess appointments of three members of the National Labor Relations Board made on the same day as Director Cordray's were the

subject of litigation *in this court* within two weeks thereafter. Def.'s Mot. at 3. The emails at issue here were written within one to four weeks following the recess appointment; they involve the Justice Department attorneys authorized to represent the Bureau in litigation; and they are described in the *Vaughn* index as containing advice and analysis regarding potential legal challenges to the appointment. Kitt Decl. ¶¶ 25-27, *Vaughn* Index at 9 (Bates 339-382), 16 (Bates 423), 28 (Bates 578-79), 30 (Bates 658), 31 (Bates 666-69). Accordingly, the records fall within the attorney work product privilege. As a result, the court does not reach the question whether they are also protected by the attorney-client privilege.[3]

### 3. *Presidential Communications Privilege*

Finally, Judicial Watch challenges the Bureau's withholding, under the presidential communications privilege, of two email exchanges between White House counsel and CFPB employees.[4] Pl.'s Combined Cross Mot./Opp'n at 14-16; *see also*

---

[3] The CFPB asserts an additional basis for withholding one of the emails in a chain dated January 12, 2012, identified at Bates 666-669; and the January 19, 2012 email, identified at Bates 423, claiming they are exempt under the deliberative process privilege. See *Vaughn* Index at 16, 31-32. Notably, Plaintiff does not challenge the withholding under the deliberative process privilege.

[4] The Bureau asserts other bases for withholding the documents as well, see *Vaughn* index at 4 (Bates 281-82); 49 (Bates 834); however, because the court finds they are properly withheld under the presidential communications privilege, the court does not reach these additional asserted bases for withholding.

*Vaughn* Index at 4 (Bates 281-82); 49 (Bates 384). Plaintiff

claims that the presidential communications privilege "does not

protect the communications between the President or his advisors

and the staff of Federal agencies; it protects confidential

communications between the President's advisors, or between the

President and his advisors." Pl.'s Combined Cross Mot./Opp'n at

16. This is not the law of this Circuit. In *In re Sealed Case*,

121 F.3d 729, the circuit considered the question "How far down

the line does the presidential communications privilege go?"

*Id.* at 746, and concluded it does not stop at communications

between his immediate advisers.

> Given the need to provide sufficient elbow room for
> advisers to obtain information from all knowledgeable
> sources, the privilege must apply both to communications
> which these advisers *solicited and received from others as
> well as those they authored themselves*. The privilege must
> also extend to communications authored or received in
> response to a solicitation by members of a presidential
> adviser's staff, since in many instances advisers must rely
> on their staff to investigate an issue and formulate the
> advice to be given to the President.

*Id.* at 752 (emphasis added).[5] In this case, it is undisputed

that the withheld communications were either to or from

---

[5] The Circuit goes on to state that the privilege should not
extend to staff in agencies outside the White House who may be
providing advice on a matter which may ultimately become one for
presidential decisionmaking. *Id.* However, read within context
of the entire passage, it is clear that this refers to agency
communications which do not involve the president's advisers at
all, but rather are only between and among agency personnel.
*Id.*; see also *Judicial Watch Inc. v. DOJ*, 365 F.3d at 1114-15,

"important, senior members of the President's staff," Pl.'s Reply at 3, who were involved in advising the President on his appointment powers generally and Director Cordray's appointment specifically. Decl. of Edward N. Siskel ¶¶ 6 a, b. It is further undisputed that the withheld communications related to the President's appointment of Director Cordray, and they occurred before and immediately after the appointment. *Vaughn Index* at 4 (Bates 281-82); 49 (Bates 834). Communications generated in the course of advising the President in the exercise of his appointment and removal power are clearly protected by the presidential communications privilege. The appointment and removal power are "a quintessential and non-delegable Presidential power. . . . the President himself must directly exercise the presidential power of appointment or removal. As a result, in this case there is assurance that even if the President were not a party to the communications over which the government is asserting presidential privilege, these communications nonetheless are intimately connected to his presidential decisionmaking." *In re Sealed Case*, 121 F.3d at 752-53. The Court therefore concludes that summary judgment

---

1121 (declining to extend presidential communications privilege to documents prepared and circulated only within the Justice Department, and explaining that in these circumstances, "the ultimate goal of protecting the President's . . . access to candid advice is achieved under the deliberative process privilege for those working documents that never make their way to the Office of the President.").

should be granted to the Bureau with respect to the withholding of these documents.

### C. Segregability

Under FOIA, "[i]f a document contains exempt information, the agency must still release any reasonably segregable portion after deletion of the nondisclosable portions." *Oglesby v. U.S. Dep't of the Army*, 79 F.3d 1172, 1176 (D.C. Cir. 1996). Though not specifically raised by Judicial Watch, the Court has an "affirmative duty to consider the segregability issue sua sponte." *Trans-Pacific Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 28 (D.C. Cir. 1999). The reviewing court may rely on the description of the withheld records set forth in the *Vaughn* index and the agency's declaration that it released all segregable information. *Loving v. U.S. Dep't of Def.*, 550 F.3d 32, 41 (D.C. Cir. 2008). In this case, particularly in the absence of any contrary argument by Judicial Watch, the Court finds that the Bureau's *Vaughn* index and declaration satisfy its segregabilty burden. Kitt Decl. ¶¶ 17-18; see also *Vaughn* index.

### IV. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is **GRANTED IN PART AND DENIED IN PART.** The motion is **DENIED** with respect to the Defendant's claim that plaintiff failed to exhaust, and is further **DENIED** with respect to the

Defendant's decision to withhold the email from Nicole Isaac to Lisa Konwinski. *Vaughn* Index 12 (Bates 390-91). In all other respects, Defendant's motion is **GRANTED.** Plaintiff's cross motion for summary judgment is **GRANTED** with respect to exhaustion and the Isaac/Konwinski email; in all other respects, Plaintiff's motion is **DENIED.** An appropriate order accompanies this memorandum opinion.

**SIGNED:**    **Emmet G. Sullivan**
                **United States District Judge**
                **September 30, 2013**