## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| _____ | ) | |
| JUDICIAL WATCH, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:12-CV-00931 (EGS) |
| v. | ) | |
| | ) | |
| CONSUMER FINANCIAL | ) | |
| PROTECTION BUREAU | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MEMORANDUM OPINION

This Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, case is before the Court on a motion for partial reconsideration. On September 30, 2013, the Court issued a Memorandum Opinion and Order addressing the parties' cross-motions for summary judgment. Doc. Nos. 22 and 23. The Court held that the Consumer Financial Protection Bureau ("CFPB" or the "Bureau") had discharged its FOIA obligations in response to plaintiff Judicial Watch, Inc.'s requests for all the documents at issue except one. Accordingly, the Court granted in part and denied in part the cross-motions.

The Bureau timely filed a motion for reconsideration under Federal Rule of Civil Procedure 54(b), arguing that it had properly withheld the one document at issue. Doc. No. 28. Upon consideration of the motion, the opposition, the reply and the

surreply,[1] the relevant caselaw and the record as a whole, the Court will **GRANT** CFPB's motion for reconsideration, and will **VACATE** the September 30, 2013 Memorandum Opinion and replace it with this amended Opinion, which is substantively unchanged except for analysis of the single document at issue. See *infra* Section III.B.1.b. Accordingly, because the Court concludes that the CFPB properly withheld all of the challenged documents in this case, the defendant's Motion for Summary Judgment is **GRANTED**; the plaintiff's Cross Motion for Summary Judgment is **DENIED;** and this case is **DISMISSED.**

## I. FACTUAL BACKGROUND

Plaintiff is a non-profit, educational foundation which regularly requests access to the public records of government entities and disseminates its findings to the public. Compl. ¶ 3. On January 12, 2012, plaintiff submitted a FOIA request to CFPB, seeking all records of communications between the CFPB and various entities concerning President Obama's visit to the CFPB and his recess appointment of Richard Cordray as director of the CFPB. Declaration of Brett Kitt ("Kitt Decl.") Exh. A. The January 12 request was assigned a FOIA tracking number. *Id.* ¶ 3. On January 25, 2012, plaintiff submitted another FOIA request to CFPB, seeking all records of communications concerning Mr. Cordray's appointment as director of the CFPB and

---

[1] Plaintiff's motion to file a surreply (Doc. No. 31) is **GRANTED.**

any documentation reflecting travel and lodging for Mr. Cordray, his family, and any additional guests. *Id.* Exh. B. The January 25 request was also assigned a FOIA tracking number. *Id.* ¶ 4.

On January 27, 2012 and January 30, 2012, CFPB sent letters to plaintiff formally acknowledging the receipt of the requests. *Id.* Exhs. C, D. On March 30, 2012, CFPB issued an interim response to plaintiff's January 25 FOIA request, explaining that the Bureau's initial search for the requested documents produced 269 pages, that the Bureau would partially release 220 pages, and that the Bureau would claim FOIA Exemptions 5 and 6 for the remaining 49 pages. *Id.* Exh. F. With this response, CFPB partially released 220 pages of responsive material. *Id.* In April 2012, there were additional communications between the parties regarding the status of CFPB's determinations on the pending FOIA requests. *Id.* Exhs. G, H. On June 7, 2012, CFPB informed plaintiff by telephone and by e-mail that the Bureau intended to issue its determination shortly. *Id.* Exh. I. On the same day, plaintiff brought this action alleging that CFPB failed to comply with the relevant timelines set forth in 5 U.S.C. § 552(a)(6)(A) with respect to both of its requests. See generally Compl. On June 8, 2012, CFPB issued its determination as to both of plaintiff's FOIA requests. Kidd Decl. Exhs. J, K. With this response, CFPB partially released an additional 12 pages of responsive material

and withheld an additional 3 pages under FOIA Exemptions 5 and
6. *Id.* The response letters also informed plaintiff of the
right to administratively appeal the Bureau's determination.
*Id.*

Subsequently, while this litigation was pending, the CFFB
conducted another search for records responsive to both FOIA
requests. Kidd Decl. Exh. L. On September 28, 2012 it released
a supplemental production to plaintiff consisting of 17 pages of
responsive records released in full and 8 pages released in
part. *Id.* Eight hundred eighty pages were withheld in full.
*Id.* While preparing its *Vaughn* index, the Bureau identified a
small amount of previously withheld material which it later
determined could be partially released. *Id.* Exh. N. It
released those records to plaintiff. *Id.*

On November 9, 2012, the Bureau moved for summary judgment,
claiming that plaintiff did not exhaust its administrative
remedies. Def.'s Mot for Summ. J. at 8-15. The Bureau also
argues that its search was adequate and that all of the material
it did not release was properly withheld. See generally *Id.* On
January 18, 2013, the plaintiff filed a cross motion for summary
judgment. Plaintiff does not challenge the adequacy of the
search, nor does it challenge "the majority of CFPB's withheld
documents." Pl.'s Combined Cross Mot. for Summ J./Opp'n to
Def.'s Mot. Summ. J. ("Pl.'s Combined Cross Mot./Opp'n") at 1.

Plaintiff argues that it exhausted its administrative remedies, and further argues that the Bureau improperly invoked Exemption 5 for several records. *Id.* at 2.

## II. STANDARD OF REVIEW

### A.        **Summary Judgment in a FOIA Case**

Summary judgment is granted when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Waterhouse v. Dist. of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002). In determining whether a genuine issue of fact exists, the court must view all facts in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Under FOIA, all underlying facts and inferences are analyzed in the light most favorable to the FOIA requester; as such, only after an agency proves that it has fully discharged its FOIA obligations is summary judgment appropriate. *Moore v. Aspin*, 916 F. Supp. 32, 35 (D.D.C. 1996) (citing *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1350 (D.C. Cir. 1983)). FOIA cases are typically and appropriately decided on motions for summary judgment. *Gold Anti-Trust Action Comm., Inc. v. Bd. of Governors of Fed. Reserve Sys.*, 762 F. Supp. 2d 123, 130 (D.D.C. 2011) (citations omitted).

In reviewing a motion for summary judgment under the FOIA, the court must conduct a *de novo* review of the record. *See* 5 U.S.C. § 552(a)(4)(B) (2012). The court may award summary judgment solely on the basis of information provided by the department or agency in affidavits or declarations that describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *see also Vaughn v. Rosen*, 484 F.2d 820, 826-28 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974). Agency affidavits or declarations must be "relatively detailed and non-conclusory." *SafeCard Services v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991). Such affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *Id.* (internal citation and quotation omitted).

## III. DISCUSSION

### A. Exhaustion of Administrative Remedies

"Exhaustion of administrative remedies is generally required before filing suit in federal court so that the agency

has an opportunity to exercise its discretion and expertise on

the matter and to make a factual record to support its

decision." *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 61

(D.C. Cir. 1990) (citing *McKart v. United States*, 395 U.S. 185,

194 (1969)). In the FOIA context, this exhaustion requirement

is triggered when an agency issues a response to a FOIA request

within the relevant statutory timelines – within 20 working days

of receiving the FOIA request, or within 30 working days in

"unusual circumstances." 5 U.S.C. § 552(a)(6)(A)(i),

(a)(6)(B)(i). To trigger the exhaustion requirement, the agency

must at least:

> (i) [G]ather and review the documents; (ii) determine and
> communicate the scope of the documents it intends to
> produce and withhold, and the reasons for withholding any
> documents; and (iii) inform the requester that it can
> appeal whatever portion of the "determination" is adverse.

*Citizens for Responsibility and Ethics in Washington ("CREW") v.*

*FEC*, 711 F.3d 180, 188 (D.C. Cir. 2013); *see also* 5 U.S.C.

§ 552(a)(6)(A)(i) (providing that the response must include the

agency's "determination" on whether to comply with the request

and "the reasons therefor," and notice of the requester's right

to appeal any adverse determination). An agency response that

does not include all the necessary components may be deemed

insufficient to trigger the exhaustion requirement. *See CREW*,

711 F.3d at 188 (stating that more than "an initial statement

that the agency will generally comply with a FOIA request and

7

will produce non-exempt documents and claim exemptions in the future" is required); *Oglesby*, 920 F.2d at 67 (finding that an agency response that does not provide notice of FOIA requester's right to appeal was insufficient to trigger the exhaustion requirement).

Where the agency fails to issue a determination sufficient to trigger the exhaustion requirement within the statutory timelines, the FOIA requester is deemed to have exhausted administrative remedies. 5 U.S.C. § 552(a)(6)(C)(i). However, if the agency cures its failure to timely respond before the requester files suit, the constructive exhaustion provision does not apply and the requester must first administratively appeal any adverse determination. *Oglesby*, 920 F.2d at 63-64. Thus, to determine whether plaintiff must satisfy the exhaustion requirement in the instant case, it is necessary to determine whether CFPB has issued its determination within the relevant time period, or at least before plaintiff filed suit.

Plaintiff, in its Notice of Supplemental Authority, cites to the D.C. Circuit's decision in *CREW* to support its argument that CFPB's acknowledgement letters on January 27 and January 30, and CFPB's interim response letter on March 20 cannot trigger the administrative exhaustion requirement because the Bureau failed to notify plaintiff of the right to appeal. Pl.'s Notice of Supp. Auth. at 2. CFPB does not attempt to refute

plaintiff's arguments.  The Court agrees with plaintiff that
CFPB's letters issued prior to the initiation of this case are
insufficient to trigger the exhaustion requirement for this
reason.  CFPB only provided plaintiff with the notice of the
right to appeal in its June 8 letter.  However, because this
letter was issued *after* plaintiff initiated this lawsuit, it
cannot be used to cure CFPB's failure to timely respond to FOIA
requests.  Thus, the Court finds that CFPB failed to issue its
determination within the statutory time period or before
plaintiff brought this action, and that plaintiff has therefore
constructively exhausted its administrative remedies.

>     **B. Exemption 5**

Exemption 5 permits an agency to withhold documents such as
"inter-agency or intra-agency memorandums or letters which would
not be available by law to a party . . . in litigation with the
agency."  5 U.S.C. § 552(b)(5).  Judicial Watch challenges
CFPB's withholding of certain records based on the deliberative
process, attorney-client, attorney work product, and the
presidential communications privileges.

The deliberative process privilege "rests on the obvious
realization that officials will not communicate candidly among
themselves if each remark is a potential item of discovery and
front page news, and its object is to enhance the quality of
agency decisions by protecting open and frank discussion among

those who make them within the government." *DOI v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8-9 (2001) (citations omitted).  To qualify for withholding under the deliberative process privilege, the withheld material must be both predecisional and deliberative.  "A document is predecisional if it was prepared in order to assist an agency decisionmaker in arriving at his decision, rather than to support a decision already made.  Material is deliberative if it reflects the give-and-take of the consultative process." *Petroleum Info Corp. v. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992) (citations and quotation marks omitted).

The attorney client privilege is meant "to assure that a client's confidences to his or her attorney will be protected, and therefore encourage clients to be as open and honest as possible with attorneys." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 862 (D.C. Cir. 1980).  The privilege "is not limited to communications made in the context of litigation or even a specific dispute, but extends to all situations in which an attorney's counsel is sought on a legal matter." *Id.* The attorney work product privilege, by contrast, is "limited to documents prepared in contemplation of litigation." *Id.* at 864. While obviously related, the privileges have different goals: "the attorney client privilege exists to protect confidential

communications," while the work product privilege "promote[s] the adversary system by safeguarding the fruits of an attorney's trial preparations." *United States v. AT&T Co.*, 642 F.2d 1285, 1299 (D.C. Cir. 1980).

The purpose of the presidential communications privilege is to "guarantee the candor of presidential advisers and to provide '[a] President and those who assist him . . . [with] freedom to explore alternatives in the process of shaping policies and making decisions and to do so in a way many would be unwilling to express except privately." *In re Sealed Case*, 121 F.3d 729, 743 (D.C. Cir. 1997) (quoting *U.S. v. Nixon*, 418 U.S. 683, 708 (1974)). "This privilege extends to communications authored or received in response to a solicitation by members of a presidential adviser's staff, since in many instances advisers must rely on their staff to investigate and issue and formulate the advice to be given to the President." *ACLU v. DOJ*, Case No. 10-123, 2011 U.S. Dist. LEXIS 156267, *30 (D.D.C. Feb. 14, 2011) (citing *In re Sealed Case*, 121 F.3d at 752).

### 1. Deliberative Process Privilege

Judicial Watch challenges the CFPB's withholding of two records for which the Bureau cites only the deliberative process privilege as grounds for the withholding. The Court addresses each in turn.

a. Briefing Materials

Plaintiff challenges the CFPB's withholding of two emails within a chain dated December 6, 2011, which discuss draft briefing materials for the Deputy Secretary of the Treasury. Pl.'s Combined Cross Mot./Opp'n at 10-11; Def.'s *Vaughn* Index at 78-79, Bates 1149-1172. Plaintiff argues that the attachment to those two emails is labeled "final.dox," which indicates that the document is a final document, not a draft, and is therefore not predecisional. *Id.* at 11. The CFPB responds that "even final versions of briefing materials are predecisional and subject to the deliberative process to the extent they . . . propose talking points for agency officials to incorporate into their presentations or question-and-answer-sessions." Def.'s Opp'n to Cross Motion/Reply in Support of Summ. J. Mot. at 9-10 ("Def.'s Combined Opp'n/Reply"). The CFPB points out that the full name of the attachment is "CFPB - TFG QA – fall 2011 – final.dox." *Id.* at 11; *Vaughn* Index at 78-79. Defendant explains that TFG stands for then Treasury Secretary Timothy Geithner and QA stands for question and answer regarding the CFPB. *Id.* The document therefore "reflect[s] potential or suggested responses to a range of questions that Treasury may receive regarding the Bureau, which may or may not reflect [Treasury's] ultimate public statement or position." *Id.*

The Court finds the Bureau has carried its burden to prove the applicability of its claimed exemption. Internal communications regarding how to respond to media and Congressional inquiries have repeatedly been held to be protected under the deliberative process privilege. *Judicial Watch, Inc. v. U.S. Dep't of the Treasury*, 796 F. Supp. 2d 13, 31 (D.D.C. 2011); *Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 736 F. Supp. 2d 202, 208 (D.D.C. 2010); *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 337 F. Supp. 2d 146, 174 (D.D.C. 2004). The CFPB's declaration and *Vaughn* index indicate that the withheld documents contain talking points and briefing materials, including recommendations for how to answer questions about the CFPB, that were prepared by Bureau employees for the consideration of decision makers at Treasury. Judicial Watch's selective quoting of name of the attachment listed in the *Vaughn* index does not convince the Court otherwise.

b. <u>Email Between White House Official and CFPB</u>

The second document challenged by plaintiff is an email from Nicole Isaac, a White House staffer, to CFPB employee Lisa Konwinski. *Vaughn* Index at 12 (Bates 390-91). Although the Court previously found that the Bureau was not entitled to summary judgment with respect to this document, upon further consideration pursuant to Bureau's motion for reconsideration, the Court concludes that justice requires it to reconsider its

September 30, 2013 Opinion and Order. See Fed. R. Civ. P. 54(b)
(providing, in relevant part, that "any order or other decision,
however designated, that adjudicates fewer than all the claims
or the right and liabilities . . . may be revised at any time
before the entry of a judgment adjudicating all the claims and
all the parties' rights and liabilities."); see also *Wannall v.*
*Honeywell Int'l, Inc.*, 292 F.R.D. 26, 30 (D.D.C. 2013) ("the
considerations embedded in [Rule 54(b)'s] "as justice required"
standard leave a great deal of room for the court's discretion
and, accordingly, the "as justice requires" standard amounts to
determining whether relief upon reconsideration is necessary
under the relevant circumstances.")(citations omitted).  The
Court therefore will grant the Bureau's motion for
reconsideration with respect to this document and will consider
anew its motion for summary judgment.

The email from Ms. Isaac, a White House staffer, to CFPB
employee Lisa Konwinski is titled "HJC February 15th on Cordray,"
and the Bureau claims it is subject to the deliberative process
privilege because it constitutes "a request of the White House
for advice regarding a Congressional hearing and [to] discuss
suggestions for responding to that request." *Vaughn* Index at 12
(Bates 390-91).  Judicial Watch argues that the email is not
subject to the privilege because under FOIA, the deliberative
process privilege is limited to "inter-agency or intra-agency"

14

records, 5 U.S.C. § 552(b)(5), and "[g]enerally, the White House staff is not considered to be an agency for purposes of FOIA." Pl.'s Combined Cross Mot./Opp'n at 9-10. The Bureau concedes that the White House is not an agency for the purposes of FOIA, but argues that Exemption 5 nevertheless applies to communications between agencies and the White House that would otherwise be privileged in civil discovery. Def.'s Combined Opp'n/Reply at 13-14.

The initial consideration under Exemption 5 is whether the record is of the type intended to be covered by "inter-agency or intra-agency memorandums." 5 U.S.C. § 552(b)(5). This Circuit has found the threshold requirement satisfied for communications exchanged between agencies and the Office of the President, even though that office is not an agency for the purposes of FOIA. *See Judicial Watch Inc. v. DOJ*, 365 F.3d 1108, 1110 n.1 (D.C. Cir. 2004); *In re Sealed Case*, 121 F.3d 729 (D.C. Cir. 1997). Moreover, upon reconsideration, the Court agrees with defendant that Circuit precedent in *Judicial Watch, Inc. v. Dep't of Energy*, 412 F.3d 125 (D.C. Cir. 2005), supports its claim for withholding. In that case, the Circuit held the deliberations of a Presidential Advisory Group, the National Energy Policy Development Group, were protected from disclosure even though the NEPDG was not an agency subject to FOIA. *Judicial Watch, Inc. v. Dep't of Energy*, 412 F.3d at 129 (although "the NEPDG is

15

not itself an "agency" subject to the FOIA because its sole function is to advise and assist the President . . . [t]he district court erred . . . in thinking that Exemption 5 therefore does not protect the deliberations of the NEPDG."). The Court stated:

> [W]e think it inconceivable [that] Congress intended Exemption 5 to protect the decision-making processes of the Executive Branch when the decision is to be made by "agency" officials subject to oversight by the President and not when the decision is to be made by the President himself and those same agency officials are acting in aid of his decision-making processes. . . . That the President, rather than an agency, initiated the policy development process is of no moment; what matters is whether a document will expose the pre-decisional and deliberative processes of the Executive Branch.

*Id.* at 130-31. Based upon the foregoing, it is clear that communications between the CFPB and White House staff may be "inter-agency or intra-agency memorandums" for the purposes of Exemption 5's deliberative process privilege.

In this case, the CFPB's declaration and *Vaughn* index indicate that the communication at issue involved advice on preparing for an upcoming Congressional hearing regarding Mr. Cordray. As previously noted in Section III.B.1.a, internal communications as part of an Executive Branch decision-making process regarding Congressional hearings are protected under the deliberative process privilege. *Judicial Watch v. U.S. Dep't of Commerce*, 337 F. Supp. 2d at 174. Judicial Watch does not argue otherwise, either in its original filings or its responses to

the Motion for Reconsideration.  Accordingly, upon

reconsideration the Court concludes that summary judgment should

be granted with respect to the withholding of this document.

### 2. Attorney Client and Attorney Work Product Privilege: Communications with Department of Justice

Plaintiff challenges the Bureau's withholding of four

communications between employees at the Bureau and attorneys at

the Department of Justice.[2]  See Pl.'s Combined Cross Mot./Opp'n

at 12.  These communications took place on January 12, 19 and

27, 2012.  *Id.; see also Vaughn* Index at 9 (Bates 339-382), 16

(Bates 423), 28 (Bates 578-79), 30 (Bates 658), 31 (Bates 666-

69).  Plaintiff argues that the Bureau has not demonstrated the

attorney client privilege applies because it has not

specifically established the lawyer client relationship.  *Id.*

Plaintiff also argues the CFPB has not met its burden to show

the work product doctrine applies because it has not shown the

DOJ lawyers were working "in the capacity of [the CFPB's]

attorney[s] . . . for any specific litigation."  *Id.* at 12.

CFPB responds that all of these emails concern anticipated

litigation challenging President Obama's January 4, 2012 recess

---

[2] Plaintiff also challenged the withholding of an email exchange
between the CFPB and the Treasury pursuant to the attorney
client and work product privileges.  Pl.'s Combined Cross
Mot./Opp'n at 11-12, *Vaughn* Index at 77-78 (Bates 1135-48).  The
Bureau subsequently released the document to the plaintiff.
Def.'s Combined Opp'n/Reply at 12, n.5.  Accordingly, it is no
longer a subject of dispute between the parties.

appointment of Director Cordray.  Def.'s Mot. at 21-22; Kitt
Decl. ¶ 26-27 (explaining that Department of Justice attorneys
are authorized to represent the Bureau in litigation, and that
the communications occurred "for the purpose of defending the
CFPB in litigation challenging the recess appointment of the
Director.").  The government argues that litigation over
Director Cordray's recess appointment was reasonably foreseeable
in light of immediate litigation challenging other Presidential
recess appointments made on the same day as Director Cordray's.
Def.'s Mot. at 2-3, 23-24; Def.'s Combined Opp'n/Reply at 12-13.

In assessing whether the proponent has carried its burden
to show a document is protected as work-product, the relevant
inquiry is "whether, in light of the nature of the document and
the factual situation in the particular case, the document can
fairly be said to have been prepared . . . because of the
prospect of litigation." *EEOC v. Lutheran Soc. Servs.*, 186 F.3d
959, 968 (D.C. Cir. 1999).  Although an agency need not have a
specific claim in mind when preparing the documents, there must
exist some articulable claim that is likely to lead to
litigation in order to qualify the documents as attorney work-
product. *Coastal States Gas Corp.*, 617 F.2d at 865; *Am.
Immigration Council v. Dep't of Homeland Security*, 905 F. Supp.
2d 206, 221 (D.D.C. 2012) (work product encompasses documents
prepared for litigation that is "foreseeable," if not

necessarily imminent; "documents that . . . advise the agency of the types of legal challenges likely to be mounted to a proposed program, potential defenses available to the agency, and the likely outcome," are covered).

In this case, the CFPB's affidavit and *Vaughn* index consistently demonstrate that the documents were prepared in reasonable anticipation of litigation challenging the appointment of Director Cordray. It is a matter of public record that the legality of the appointment was immediately questioned by some members of Congress, and the recess appointments of three members of the National Labor Relations Board made on the same day as Director Cordray's were the subject of litigation *in this court* within two weeks thereafter. Def.'s Mot. at 3. The emails at issue here were written within one to four weeks following the recess appointment; they involve the Justice Department attorneys authorized to represent the Bureau in litigation; and they are described in the *Vaughn* index as containing advice and analysis regarding potential legal challenges to the appointment. Kitt Decl. ¶¶ 25-27, *Vaughn* Index at 9 (Bates 339-382), 16 (Bates 423), 28 (Bates 578-79), 30 (Bates 658), 31 (Bates 666-69). Accordingly, the records fall within the attorney work product privilege. As a result,

the court does not reach the question whether they are also protected by the attorney-client privilege.[3]

### 3. Presidential Communications Privilege

Finally, Judicial Watch challenges the Bureau's withholding, under the presidential communications privilege, of two email exchanges between White House counsel and CFPB employees.[4]  Pl.'s Combined Cross Mot./Opp'n at 14-16; *see also Vaughn* Index at 4 (Bates 281-82); 49 (Bates 384).  Plaintiff claims that the presidential communications privilege "does not protect the communications between the President or his advisors and the staff of Federal agencies; it protects confidential communications between the President's advisors, or between the President and his advisors."  Pl.'s Combined Cross Mot./Opp'n at 16.  This is not the law of this Circuit.  In *In re Sealed Case*, 121 F.3d 729, the circuit considered the question "How far down the line does the presidential communications privilege go?"

---

[3] The CFPB asserts an additional basis for withholding one of the emails in a chain dated January 12, 2012, identified at Bates 666-669; and the January 19, 2012 email, identified at Bates 423, claiming they are exempt under the deliberative process privilege.  See *Vaughn* Index at 16, 31-32.  Notably, Plaintiff does not challenge the withholding under the deliberative process privilege.

[4] The Bureau asserts other bases for withholding the documents as well, see *Vaughn* index at 4 (Bates 281-82); 49 (Bates 834); however, because the court finds they are properly withheld under the presidential communications privilege, the court does not reach these additional asserted bases for withholding.

*Id.* at 746, and concluded it does not stop at communications between his immediate advisers.

> Given the need to provide sufficient elbow room for advisers to obtain information from all knowledgeable sources, the privilege must apply both to communications which these advisers *solicited and received from others as well as those they authored themselves*. The privilege must also extend to communications authored or received in response to a solicitation by members of a presidential adviser's staff, since in many instances advisers must rely on their staff to investigate an issue and formulate the advice to be given to the President.

*Id.* at 752 (emphasis added).[5]  In this case, it is undisputed that the withheld communications were either to or from "important, senior members of the President's staff," Pl.'s Reply at 3, who were involved in advising the President on his appointment powers generally and Director Cordray's appointment specifically.  Decl. of Edward N. Siskel ¶¶ 6 a, b.  It is further undisputed that the withheld communications related to the President's appointment of Director Cordray, and they

---

[5] The Circuit goes on to state that the privilege should not extend to staff in agencies outside the White House who may be providing advice on a matter which may ultimately become one for presidential decisionmaking.  *Id.*  However, read within context of the entire passage, it is clear that this refers to agency communications which do not involve the president's advisers at all, but rather are only between and among agency personnel. *Id.*; see also *Judicial Watch Inc. v. DOJ*, 365 F.3d at 1114-15, 1121 (declining to extend presidential communications privilege to documents prepared and circulated only within the Justice Department, and explaining that in these circumstances, "the ultimate goal of protecting the President's . . . access to candid advice is achieved under the deliberative process privilege for those working documents that never make their way to the Office of the President.").

occurred before and immediately after the appointment. *Vaughn Index* at 4 (Bates 281-82); 49 (Bates 834). Communications generated in the course of advising the President in the exercise of his appointment and removal power are clearly protected by the presidential communications privilege. The appointment and removal power are "a quintessential and non-delegable Presidential power. . . . the President himself must directly exercise the presidential power of appointment or removal. As a result, in this case there is assurance that even if the President were not a party to the communications over which the government is asserting presidential privilege, these communications nonetheless are intimately connected to his presidential decisionmaking." *In re Sealed Case*, 121 F.3d at 752-53. The Court therefore concludes that summary judgment should be granted to the Bureau with respect to the withholding of these documents.

**C. Segregability**

Under FOIA, "[i]f a document contains exempt information, the agency must still release any reasonably segregable portion after deletion of the nondisclosable portions." *Oglesby v. U.S. Dep't of the Army*, 79 F.3d 1172, 1176 (D.C. Cir. 1996). Though not specifically raised by Judicial Watch, the Court has an "affirmative duty to consider the segregability issue sua sponte." *Trans-Pacific Policing Agreement v. U.S. Customs*

*Serv.*, 177 F.3d 1022, 28 (D.C. Cir. 1999). The reviewing court may rely on the description of the withheld records set forth in the *Vaughn* index and the agency's declaration that it released all segregable information. *Loving v. U.S. Dep't of Def.*, 550 F.3d 32, 41 (D.C. Cir. 2008). In this case, particularly in the absence of any contrary argument by Judicial Watch, the Court finds that the Bureau's *Vaughn* index and declaration satisfy its segregabilty burden. Kitt Decl. ¶¶ 17-18; see generally *Vaughn* Index.

**IV. CONCLUSION**

For the foregoing reasons, the Court will **GRANT** the Bureau's motion for reconsideration, and will vacate the Memorandum Opinion and Order dated September 30, 2013. The Memorandum Opinion is replaced with this amended Opinion, which is substantively unchanged except as relates to the single document at issue. Accordingly, because the Court concludes that the CFPB properly withheld all of the challenged documents in this case, the defendant's Motion for Summary Judgment is **GRANTED**; the plaintiff's Cross Motion for Summary Judgment is **DENIED;** and this case is **DISMISSED**. An appropriate order accompanies this memorandum opinion.

**SIGNED:**     **Emmet G. Sullivan**
             **United States District Judge**
             **March 27, 2014**